**UNITED STATES of America, Plaintiff,**

**and**

**Yonkers Branch-National Association for the Advancement of Colored People, et al., Plaintiffs-Intervenors,**

v.

**YONKERS BOARD OF EDUCATION; City of Yonkers; and Yonkers Community Development Agency, Defendants.**

**CITY OF YONKERS and Yonkers Community Development Agency, Third-Party Plaintiffs,**

v.

**UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, and Secretary of Housing and Urban Development, Third-Party Defendants.**

No. 80 CIV 6761 (LBS).

United States District Court, S.D. New York.

July 10, 1987.

U.S. Dept. of Justice, Civil Rights Div., Washington, D.C., Sarah Vanderwicken, for plaintiff U.S.

Michael H. Sussman, Yonkers, N.Y., for plaintiffs-intervenors N.A.A.C.P.

Vedder, Price, Kaufman, Kammholz & Day, Michael W. Sculnick, New York City, for defendants City of Yonkers and Yonkers Community Development Agency.

Butzel, Long, Gust, Klein & Van Zile, John B. Weaver, John H. Dudley, Mark T. Nelson, Detroit, Mich., for defendant Yonkers Bd. of Educ.

U.S. Dept. of Justice, Civ. Div., Raymond Larizza, Calvin E. Davis, Washington, D.C., John W. Herold, Office of Litigation, U.S. Dept. of Housing & Urban Renewal, Washington, D.C., for third-party defendant Dept. of Housing & Urban Development.

## OPINION

SAND, District Judge.

By letter dated July 8, 1987, counsel for the City of Yonkers forwarded to the Court copies of three resolutions adopted by the City Council on July 7, 1987:

1) Resolution No. 139–1987 with respect to the adoption of a Housing Assistance Plan (Appendix A);

2) Resolution No. 140–1987 with respect to a request to the County of Westchester (Appendix B);

3) Resolution No. 141–1987 with respect to an "alternate plan" (Appendix C).

Resolutions Nos. 139 and 140 are said by the City to be in compliance with this Court's Order of July 1, 1987 (Appendix D). At a telephone conference among all the parties held at the City's request on July 9, 1987, counsel for the Department of Justice advised that the Department was not yet in a position to state whether or not Resolution No. 139 was adequate. The Court directed that counsel for the Department and HUD expeditiously review the matter and promptly advise the Court if there were any perceived inadequacies in that resolution.

Counsel for the City, at said conference, assured the Court and the parties that Resolution No. 140 (the request to the County) was a separate, completely independent resolution and was not subject to any conditions or qualifications set forth in Resolution No. 141. Nor was Resolution 140 superseded by Resolution No. 141. (See Transcript, July 9, 1987). Counsel for the City further assured the Court and the parties that the City intended to furnish to the County, together with its request, the amplifying data set forth in this Court's July 1st Order and that the City would furnish the Court and the parties with copies of such submission prior to transmission to the County. Here too, the parties are to advise the Court as soon as possible if they believe that there are any inadequacies in this resolution's compliance with the July 1st Order.

Resolution No. 141 proposes an alternative plan and seeks to impose conditions upon the Court before the City would seek to obtain the necessary consents and waivers. The conditions include a 90-day stay; a limit of 100 on the amount of construction in addition to the first 200 units; a prohibition against mixing affordable and public housing. The resolution which proposes eight sites also contains a proviso that if any portion of the resolution is not complied with, the entire resolution is to be deemed null and void. The resolution recites that it is enacted pursuant to a request by a number of east side civic groups listed in the resolution.

As the Court advised the parties at its July 9th conference, the constructive participation by the Yonkers City Council and these and other civic groups in the formulation of a housing remedy is welcomed and is to be encouraged. Before the Court would enter any final order directing the construction of any housing, it would give due consideration to any proposals made on behalf of Yonkers including proposals involving alternate or additional sites and densities. However, before any such alternatives could be seriously considered, the Court would have to be assured that the proposals were viable and met all relevant criteria. In this regard, the Court directed HUD to conduct a preliminary evaluation of the Andrus Field site, the only site listed in the resolution not previously inspected by HUD.

The Court urges Yonkers to proceed as expeditiously as possible to obtain the consents and waivers needed to demonstrate the feasibility of its alternative plan. If and when Yonkers comes before the Court and makes a showing that it has either obtained formal approvals for the sites or a persuasive showing that the requisite approvals have informally been given, the Court will give careful and sympathetic consideration to any such alternative plan. In the interim, the parties are, of course, to proceed pursuant to the timetable set forth in the July 1st Order.

Insofar as any request for a stay is concerned, if it should develop that construction is about to commence prior to any ruling by the Court of Appeals in the appeal now pending before that Court and any party shall move for a stay of such construction, the Court will also give such an application careful and sympathetic consideration in the light of the conditions then obtaining. It is not the intent of the Court to require that any wasteful or counterproductive action be taken. The Court further assures the parties that it will permit a sufficient interval of time between any ruling of this Court with respect to a stay and the commencement of construction to enable any party dissatisfied with any aspect of this Court's ruling on such an application to seek appellate review of this Court's determination.

As was acknowledged at the July 9th conference, any determination as to the total number of units eventually to be constructed pursuant to the housing remedy order prior to the receipt of the Outside Housing Advisor's reports and the comments of all the parties would be premature. No such determination of the total number of units to be built or of any mix of public and affordable housing will be made, however, without a full hearing, at which the views of Yonkers will be carefully considered.

SO ORDERED.

## APPENDIX A

BY VICE MAYOR OXMAN:

WHEREAS, pursuant to the Order of the Hon. Leonard Sand, United States District Judge, entered May 28, 1986 in the matter entitled "U.S.A. v. City of Yonkers etc." in part VIII thereof the City of Yonkers was required to prepare and approve appropriate Housing Assistance Plans in a timely manner; and

WHEREAS, pursuant to said Court Order the plaintiffs have previously submitted a Three Year Housing Assistance Plan dated June 19, 1986 with a period of applicability from October 1, 1985 to September 30, 1986; and

WHEREAS, on advice of Appellate Counsel and without prejudice to our rights on appeal,

BE IT RESOLVED that the City of Yonkers, in City Council convened, hereby adopts the attached Housing Assistance Plan for the fiscal year 1987 with a period of applicability from October 1, 1986 to September 30, 1987 for Grant No. B–85–MC–36–0112 as the Second Year of the Three Year HAP approved July 11, 1986 and the City Manager is directed to forward same to the U.S. Department of Housing and Urban Development, Community Development Block Grant Program, Entitlement Program.

Adopted by the City Council at a stated meeting held on July 7, 1987, by a vote of 9 to 4, Minority Leader Longo, Councilmembers Palais, Spallone and Fagan voting "NAY."

COMMUNITY DEVELOPMENT BLOCK GRANT PROGRAM
ENTITLEMENT PROGRAM

**HOUSING ASSISTANCE PLAN   For FY '87**

☒ Original   ☐ Revision   ☐ Amendment

City of Yonkers   B-85-MC-36-0112

5. INCREMENTAL YEAR OF SUBMISSION: ☐ 1  ☒ 2  ☐ 3

PERIOD OF APPLICABILITY: 10/1/'86 to 9/30/'87

RESTORATION OF HAP, PARTS I-All, BY REFERENCE Parts I, II and III of the HAP approved 7/11/86 ... (Latest amendment date of the HAP, Parts I - III, if any:) ... are covered by reference and are not contained in this (second) (third) year submission.

6. HUD APPROVAL _____ (Signature of Authorized Official) _____ (Date)

**PART IV - ANNUAL HOUSING ASSISTANCE GOALS**

| PROGRAM OR PROJECT (List HUD Assisted Rental Housing Programs first, then other Rental Programs and Owner Programs Separately.) | UNITS TO BE ASSISTED | | | LOWER INCOME HOUSEHOLDS TO BE ASSISTED | | | |
|---|---|---|---|---|---|---|---|
| | HUD (B) | NUMBER OF UNITS (C) | HOUSING TYPE (D) | ELDERLY (E) | SMALL FAMILY (F) | LARGE FAMILY (G) | TOTAL (H) |
| Rental Rehabilitation Program | x | 20 | Rehab | 2 | 12 | 6 | 20 |
| Section 8 Existing (Renters) | x | 25 | Existing | 8 | 14 | 3 | 25 |
| Section 312 Rehabilitation Program (Renters) | x | 15 | Rehab | 4 | 8 | 3 | 15 |
| ... Rehabilitation Loan and Grant Program (Renters) | | 18 | Rehab | 5 | 10 | 3 | 18 |
| CDBG Rehabilitation Program (Owner) | | 12 | Rehab | 2 | 5 | 1 | 8 |

HUD-7091.2 (11-82) (3 CFR 570.306)

## APPENDIX B

BY MAYOR MARTINELLI AND VICE MAYOR OXMAN:

WHEREAS, on July 1, 1987 the Hon. Leonard B. Sand, United States District Judge, entered an Order requiring the City Council to adopt certain resolutions under threat of contempt of court which would result in devastating fines to the taxpayers of the City of Yonkers, and

WHEREAS, the adoption of this Resolution is in compliance with the Order of the Court and is without waiver to the City's right to appeal from the Order requiring the adoption of this Resolution;

NOW, THEREFORE, BE IT RESOLVED by the City Council of the City of Yonkers that the City of Yonkers hereby requests that the County Board of Legislators of Westchester County issue a binding declaration that with respect to those specific sites designated by the Court-appointed outside Housing Advisor, Oscar Newman, pursuant to Paragraph 9 of the Court Order entered July 1, 1987, the County waives any reverter interest in such sites should they be used for the purposes of housing pursuant to Orders of the Hon. Leonard B. Sand in the action entitled *United States of America and Yonkers Branch NAACP v. Yonkers Board of Education City of Yonkers, etc.* Docket No. 80 CIV 6761 and that we request that the County take prompt action in responding to this request.

BE IT FURTHER RESOLVED that the City Clerk is hereby directed to forward a certified copy of this Resolution forthwith to the Clerk of the Board of Legislators of the County of Westchester.

Adopted by the City Council at a stated meeting held on July 7, 1987, by a vote of 8 to 5, Minority Leader Longo, Councilmembers Palais, McKirgan, Spallone and Fagan voting "NAY."

## APPENDIX C

BY MAYOR MARTINELLI, VICE MAYOR OXMAN, COUNCILMEMBERS BURGESS, NUCKEL, MANGIERI, WASCISKO AND RESTIANO;

WHEREAS, the United States District Court, by the Hon. Leonard B. Sand, in Order entered July 1, 1987 has determined that the first 200 units of public housing shall be built on Walt Whitman Junior High school, Lincoln High school, School No. 4 and School No. 30, and

WHEREAS, the Court has required that the City adopt a resolution requesting the County of Westchester to waive its reverter interest in all County surplus property identified by Oscar Newman for the construction of any housing pursuant to this Court Order, and

WHEREAS, the City Council on April 15, 1987 adopted Resolution No. 69–1987 suggesting that the Court adopt an alternate housing plan which would reduce the density of public housing on the school sites and thereby reduce the impact of such housing on the surrounding neighborhoods with several conditions incorporated therein, and

WHEREAS, on or before July 6, 1987 a number of east side civic groups including Crestwood Civic Association, Armour Villa Taxpayers Association, East Yonkers Homeowners and Wildlife Association, Lawrence Park West Neighborhood and Homeowners Association, Mohegan Heights Homeowners Association, Sunnyside Park Community Association, Taxpayers of Northeast Yonkers, Beech Hill Civic Association, and Victory Heights Homeowners Association, adopted a resolution requesting that the City Council renew its attempts to pursue the alternative housing plan provided certain conditions are incorporated within that plan while the City pursues its appeal to the fullest extent, and

WHEREAS, it is imperative that the City Council protect the taxpayers of the City of Yonkers from potentially devastating fines as well as a finding of contempt and at the same time minimize the potentially devastating effect that wide spread housing development would have on the east side of Yonkers without waiving any of the City's rights in pursuing its appeal of the Court's Orders in this case.

NOW, THEREFORE, BE IT RESOLVED, that the City Council in accordance with the Resolution adopted by the East Side Civic Associations listed above, request the Court to consider implementing an alternative housing plan pursuant to Resolution No. 69–1987 adopted on April 15, 1987 except as modified below.

BE IT FURTHER RESOLVED, that the City Council reserves all of its rights on its appeal in the matter entitled *United State of America v. City of Yonkers* and reaffirms its commitment to appeal the liability Order and the Housing Remedy Orders and all other Orders to date all the way to the Supreme Court of the United States, if necessary.

BE IT FURTHER RESOLVED, that the City Council requests that the Court modify its Order placing 200 units of public housing on only the four school sites and instead reduce the density of each site and to place no more than the following number of units on the following sites:

Walt Whitman Junior High school—38–41 units

School No. 4—38–41 units

Lincoln High school—38–41 units

School No. 30—8–10 units facing or adjacent to Nevada Place only

Kardash Park—30–36 units

Redmond Field—10–12 units

Andrus Field—16–18 units

Hillview Reservoir—10–12 units

all in a semi detached or town house style.

BE IT FURTHER RESOLVED, that the City Council requests that the Court grant to the City of Yonkers a stay of construction of any public housing units until 90 days following the date of the decision of the City's appeal to the Second Circuit Court of Appeals and that the Court not place any affordable or other housing on any site on which the Court directs public housing to be built and that not more than 200 additional units of affordable or other housing be provided pursuant to the Housing Remedy Order, with not more than 100 to be new construction.

BE IT FURTHER RESOLVED, that in the event the Court grants a stay as set forth above and limits the construction of housing as requested above, the City Council hereby requests the County of Westchester to waive any present or future interest including reverter rights in those residual parcels known as "N" (Redmond Field), and "X" (Kardash Park) for the municipal purpose of Court Ordered public housing and for no other purpose notwithstanding any other resolution adopted by the City Council; that the City Council requests that a small portion of Andrus Park be de-dedicated as parkland, if necessary, but only to the extent of small southerly portion of the park up to and including the first two tennis courts for the construction of Court Ordered public housing as set forth in this resolution; and that the City Council hereby requests from the City of New York and/or the City of New York Water Board the transfer of a certain small portion of the Hillview Reservoir property along Shipman Avenue for the construction of public housing as set forth above.

BE IT FURTHER RESOLVED, that the City Council hereby requests the Board of Education to declare as surplus those portions of the school property to be used for public housing pursuant to this resolution and Court Order and return same to the City.

BE IT FURTHER RESOLVED, that the City Council declares that no further housing pursuant to the Court Order would be constructed on school property.

BE IT FURTHER RESOLVED, that the City shall build additional tennis courts and other recreational facilities at School 30 and Walt Whitman to more than replace any loss of such facilities.

BE IT FURTHER RESOLVED, that in the event that any portion of any of this Resolution is not complied with the entire Resolution be deemed null and void and with no effect.

Adopted by the City Council at a stated meeting on July 7, 1987 as amended by a vote of 8 to 5, Minority Leader Longo, Councilmembers Palais, McKirgan, Spallone and Fagan voting "NAY."

## APPENDIX D

## ORDER

SAND, District Judge.

On May 28, 1986, this Court issued its Housing Remedy Order which required the City of Yonkers to take certain specific actions to cure the intentional racial segregation found in this Court's liability Opinion, 624 F.Supp. 1276 (S.D.N.Y.1985). The City of Yonkers has failed to take many of the actions required by the Housing Remedy Order. Instead, the City has delayed meaningful remedial action and declined repeated opportunities accorded to the City to act itself in the first instance in taking remedial action.

In this light and cognizant of its responsibility to insure implementation of the 1986 Housing Remedy Order, the Court, on the joint application of the United States Department of Justice and the Yonkers Branch-National Association for the Advancement of Colored People, hereby orders:

## I. PUBLIC HOUSING

1. By July 3, 1987, the Outside Housing Advisor (hereinafter "OHA") shall submit to the Court and the parties his proposal, including unit distributions, for the 200 units of public housing reserved by HUD through its Consent Decree with the plaintiff-intervenors (as approved by this Court on March 19, 1984). In submitting this proposal, the OHA shall utilize the following sites: Whitman; School 4; Lincoln High School and School 30. The OHA shall also include in his proposal a statement of the unit distributions and other consequences which would result if only the Whitman and School 4 sites were utilized for the 200 units.

2. With respect to the School 30 and Lincoln High School sites, HUD shall forthwith provide funds if necessary to complete site surveys and preliminary analysis deemed necessary for its review.

3. By July 9, 1987, HUD shall report to the Court any and all steps necessary for resolution of the "historic preservation" review regarding School 4 and its timetable for their accomplishment. The Court has previously determined and now reaffirms that the black-top across from School 4 on Trenchard Street is considered part of the School 4 site for purposes of this Order.

4. By July 13, 1987, the parties shall submit to the Court comments concerning the OHA's proposal. If the Yonkers School Board opposes the utilization of portions of the Lincoln High School and School 30 sites for these purposes and wishes an evidentiary hearing on this issue, it shall so advise the Court and such hearing will be held on July 15, 1987 at 10:00 A.M. and continue until concluded.

5. By July 13, 1987, HUD shall submit to the Court the final and approved RFPs, as proposed by the Municipal Housing Authority, for the Whitman and School 4 sites. By this date, HUD shall advise the Court whether these RFPs or either of them may be used for the Lincoln High School and School 30 sites and, if not, what changes it deems required for such use.

6. By July 27, 1987, HUD shall review the suitability of School 30 and Lincoln High School (such portion as the OHA designates) for the units of public housing proposed by the OHA and shall apprise the Court and the parties of any specific deficiencies these sites may possess for the intended uses. By the same date, HUD shall also inform the Court of any measures it believes should and may be taken to mitigate these deficiencies and thereby improve the sites for their intended uses.

7. By August 7, 1987, the parties shall submit to the Court any further written submissions deemed relevant to the development of the 200 units of public housing on the sites identified by the OHA. Thereafter, the Court shall determine whether further proceedings should precede entry of a final Order.

## II. LONG TERM HOUSING PLAN

8. The May 28, 1986 Housing Remedy Order required the City of Yonkers to submit a long term housing remedy plan by November 15, 1986. The City failed to do so. After the Department of Justice moved to hold the City in contempt of court for this failure, among other acts of noncompliance with the Remedy Order, and the plaintiff-intervenors moved for the appointment of a Housing Master to take required remedial activities, the Court permitted the City to nominate an Outside Housing Advisor. In light of the events which have transpired subsequent to this nomination, the Court directs that the OHA shall cease functioning as representative or designee of the City and shall act solely in the capacity of an advisor to the Court pursuant to the provisions of paragraph IV-F. of the Housing Remedy Order.

9. By July 7, 1987, to facilitate implementation of the long term housing reme-

dy, the Court hereby directs that the OHA advise the Court and the parties of those sites formerly owned by the County of Westchester which the OHA believes may be suitable for housing to be built pursuant to the long term housing plan.

10. By July 15, 1987 the City of Yonkers shall request from the County of Westchester a binding declaration that, with respect to the sites designated pursuant to paragraph 9 hereof, the County waives any reverter interest in such sites should they be used for the purposes of housing pursuant to Orders of this Court. The City shall request prompt action by the County. In making its request of the County, the City shall provide pertinent information showing (a) the uses, if any, to which the parcels in question have been put since 1961, (b) any current municipal plans (developed before March 1, 1987) for such parcels and (c) the uses to which comparable parcels have been put heretofore. By July 13, 1987, the City shall furnish to the Court and the parties a copy of its proposed request of the County, including the foregoing information.

11. By August 7, 1987, the OHA shall provide the Court and the parties with his proposal for a long term housing remedy plan.

12. This plan shall both identify sites (publicly and privately held) which the OHA deems potentially feasible for the provision of assisted housing, housing, other than new construction or rehabilitation on the identified sites and enumerate those contributions to the development of such housing which the City of Yonkers should be required to make. This plan shall present alternatives assuming a final goal with respect to assisted units of 200, 400, 600 or 800.

13. By August 22, 1987, the parties shall submit comments concerning the long term housing remedy proposal. The Court shall then determine whether further proceedings are necessary before entry of a final remedial Order.

14. On or before July 9, 1987, the City shall adopt and submit to HUD (with copies to the Court and the parties) a Housing Assistance Plan (HAP) for its Year 13 Community Development Block Grant application (as required for the receipt of grants by the Housing and Community Development Act of 1974, as amended). The HAP shall be in good faith compliance with the relevant statutes and regulations and consistent with the City's well defined prior commitments, undertakings, and the terms of the Housing Remedy Order.

15. Should the OHA determine that technical studies, including surveys, soil borings, etc. are required for the development of the long term housing plan, he shall promptly and in writing request same from the City Manager. Within three (3) business days of any such request, the City Manager shall respond in writing indicating (a) that the City shall provide the requested support or (b) an explanation of why the City declines voluntarily to provide the requested support, or some of it. The OHA shall promptly submit any such negative response to the Court, with copies to the parties, for resolution.

16. Failure to implement the actions required by this Order shall be cause for entry of a finding of contempt against the City of Yonkers and against those City officials who, it is determined, have intentionally frustrated this Order. The City of Yonkers is hereby placed on notice that if the City is found to be in contempt of this Order or any provision hereof, it is the intent of this Court, in addition to any other sanctions which may appear to the Court to be appropriate, to impose a fine for each day of non-compliance. It is further the present intent of this Court that said fine be at a daily rate pursuant to the following formula: (a) $100 for the first day of non-compliance after entry of a finding of contempt and notice; (b) the daily rate shall be doubled for each consecutive day of non-compliance. Said fine shall be payable by a check drawn to the "Clerk, Southern District of New York" and the City Manager shall cause said check to be delivered to the Clerk of the Court by 4:30 P.M. on each day that the Clerk's Office is open representing the amount of the fine

incurred for the previous day. The check to be delivered on a Monday shall include any fines incurred with respect to days on which the Clerk's Office was not open. The proceeds of said checks shall be paid into the Treasury of the United States for general purposes and shall not be earmarked, escrowed, or otherwise allocated for any special purpose of fund. The amount of funds previously paid shall not be refundable. The City of Yonkers is directed to furnish a copy of this Order forthwith to the Emergency Financial Control Board for the City of Yonkers.

17. The City is also hereby placed on notice that this Court shall take those actions, as specified herein or otherwise determined to be required, to implement the Housing Remedy Order, regardless of the City's continued non-compliance. As set forth in paragraph 16 hereof, non-compliance by the City of Yonkers may result in a finding of contempt and appropriate sanctions against the City and its officials. However, such non-compliance shall not thwart or frustrate implementation of the Housing Remedy Order and whenever feasible and appropriate the Court may, in its discretion, itself act or direct others to act with the same force and effect as if those actions had been taken by Yonkers itself.

18. Without prior written approval of this Court, the City of Yonkers shall issue no building permits with respect to any City-owned or controlled land or property. Without prior written approval of this Court, the City of Yonkers shall not sell, transfer or otherwise encumber any City-owned or controlled property.

SO ORDERED.